UNITED STATES DISTRICT COURT <u>FOR ONLINE PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

FRANCISCO GARCIA,

                              Petitioner,                    MEMORANDUM
                                                             <u>AND ORDER</u>
                                                             07-CV-3790 (JG)

          -against-

HAROLD D. GRAHAM, Superintendent,
Auburn Correctional Facility,

                              Respondent.
-------------------------------------------------------------x
A P P E A R A N C E S :

          FRANCISCO GARCIA
                    99-A-4933
                    Auburn Correctional Facility
                    135 State Street
                    Auburn, NY 13021
                    Petitioner, *Pro Se*

          RICHARD A. BROWN
                    District Attorney
                    Queens County
                    125-01 Queens Boulevard
                    Kew Gardens, NY 11415
          By:      John M. Castellano
                    Anastasia Spanakos-Orfan
                    Attorney for Respondent

JOHN GLEESON, United States District Judge:

          Francisco Garcia petitions for a writ of habeas corpus pursuant to 28 U.S.C. §

2254, challenging his conviction for murder in the second degree, attempted murder in the

second degree, reckless endangerment in the first degree, and criminal possession of a weapon in

the third degree. Appearing *pro se*, Garcia raises numerous challenges to his conviction. For the

reasons stated below, the petition is denied.

BACKGROUND

A.      *The Offense Conduct*

        This case arises out of a June 9, 1996 multiple shooting.  The government's evidence at trial established that in the evening on that date, Garcia and an unapprehended man walked up to Francisco Incarnacion, Jose Luis Tapia, Juan Anaya, Fabiola Garcia, Miguel Kempis, Kempis's wife, and a child, who were sitting on the steps of 32-52 32nd Street and adjoining buildings in Queens.  Garcia pointed to the group and said "These are them."  The other man pulled out a pistol and fired five or six shots at the individuals on the steps, hitting Tapia and Anaya, who died, and Incarnacion, who survived.  After the shooting, Garcia and his associate walked casually away.  Acting on a witness's tip identifying Garcia by a nickname, the police went to an apartment Garcia had stayed at briefly and found a probation card he had left behind, bearing his name.

        On December 14, 1996, Garcia was arrested for breaking into a car.  Though Garcia gave the police the alias "Carlos Estrada," a fingerprint check revealed his identity. Garcia, who had been struck in the head with a baseball bat by the car's owner, was taken to the hospital in police custody and later returned to the precinct.

        When Garcia returned to the precinct, he was given *Miranda* warnings and made the following statement regarding the June 9, 1996 shooting:  On June 7, 1996, his friend Augustine told him that Augustine's brother was beaten up.  Garcia, walking in that area, then saw several men with blood on their shirts.  When Garcia asked them why they had bloodstains on their clothes, they cursed at him and told him it was none of his business.  On June 9, 1996, Garcia was approached at an area laundromat by several men, possibly including the ones who

2

he had seen with blood on their shirts. The men cursed at him and one hit him. One gestured as if he had a gun but did not pull it out. Garcia left the laundromat, afraid, and was approached by an individual who he had seen talking to Augustine. This individual, whose name Garcia did not know, said that he had heard about Garcia's problems and that he would accompany Garcia to talk to the people on a nearby corner and straighten out the problems. Garcia and the individual approached the people on the corner, who were sitting on the steps of 32-52 32nd Street. Garcia said that the people sitting on the steps were the ones who had hit him earlier. The other individual pulled out a gun and "sprayed the whole crowd, he fired at everybody at the crowd." Tr. 706. Garcia had not known that this individual was armed. He ran away together with the shooter.[1]

B.    *The Procedural History*

    1.    *Trial and Sentencing*

        Garcia was charged in New York Supreme Court, Queens County with two counts of intentional murder in the second degree, two counts of depraved indifference murder in the second degree; one count of attempted murder in the second degree; two counts of assault in the second degree; one count of reckless endangerment in the first degree; one count of criminal possession of a weapon in the second degree; and one count of criminal possession of a weapon in the third degree. Garcia was tried and convicted of the depraved indifference murder, attempted murder, reckless endangerment, and criminal possession of a weapon in the third degree charges. He was acquitted of the intentional murder and criminal possession of a weapon in the second degree charges.

---

[1]        Garcia also made a written statement detailing similar facts but stopping shortly after Garcia left the laundromat. He never finished this statement due to pain in his head.

As a second felony offender, Garcia was sentenced to indeterminate terms of imprisonment of twenty-five years to life on each murder conviction and a determinate term of twenty years on the attempted murder conviction. These sentences ran consecutively, producing a term of imprisonment of seventy years to life. Additionally, he was sentenced to concurrent prison terms of three and one half to seven years on the reckless endangerment conviction and five years on the weapon conviction.

  2. *Direct Appeal*

Garcia appealed his conviction on December 3, 2001, claiming through his assigned attorney: (1) that the trial court erred in granting the government's reverse-*Batson* objection to two of his peremptory challenges and in seating the two jurors; (2) that the identification procedures and his postarrest statements should be suppressed as fruits of an unlawful seizure; and (3) that his sentences were excessive and should be either reduced or run concurrently.

He also submitted a *pro se* brief arguing that his pretrial counsel and his trial counsel had both been ineffective due to (1) failing to communicating with him sufficiently; (2) failing to adequately investigate the case; (3) failing to call two pertinent witnesses; (4) failing to request a *Mapp* hearing and never objecting to the arresting detective's translation of Garcia's written postarrest statement; (5) conducting an inconsistent defense at trial; (6) being unprepared for effective cross-examination; (7) failing to read his *pro se* motions; and (8) failing to object to the court's jury charge.

The Appellate Division, Second Department affirmed Garcia's conviction on March 17, 2003. *People v. Garcia* (*Garcia I*), 756 N.Y.S.2d 492 (2d Dep't 2003). It rejected his

suppression claim as unpreserved and without merit, found his pro se claim of ineffective assistance of counsel to be mostly unreviewable on direct review and meritless to the extent it was reviewable, and rejected his claim of an excessive sentence and his reverse-Batson claim on the merits. *Id.* at 492. Garcia sought leave to appeal to the Court of Appeals, which denied his application on July 18, 2003. *People v. Garcia* (*Garcia II*), 100 N.Y.2d 580 (2003) (Rosenblatt, J.).

3.     *First* Coram Nobis *Application*

On September 30, 2003, Garcia moved *pro se* for a writ of error *coram nobis*, claiming that his appellate counsel was ineffective for failing to argue that: (1) the trial court erred in denying his request for a missing witness charge; (2) the trial court erred in failing to charge the jury that his mere presence at the scene of the crime was insufficient evidence that he was involved in the crime; (3) the trial court erred in failing too charge the jury that it must consider the attempted murder and reckless endangerment charges in the alternative; and (4) the evidence was insufficient to support his conviction.

The Appellate Division denied his motion on March 29, 2004. *People v. Garcia* (*Garcia III*), 773 N.Y.S.2d 588 (2d Dep't 2004). The Court of Appeals denied his request for leave to appeal on June 10, 2004. *People v. Garcia* (*Garcia IV*), 3 N.Y.3d 639 (2004) (Ciparick, J.).

4.     *Second* Coram Nobis *Application*

On April 14, 2005, Garcia submitted a second *pro se* petition for a writ of error *coram nobis*, claiming that his appellate attorney was ineffective for failing to argue that: (1) the consecutive sentences Garcia received constituted a different theory than the state's initial theory

in charging him; (2) Garcia did not have fair notice of the charges against him; and (3) the consecutive sentences violated the Double Jeopardy Clause.

The Appellate Division denied Garcia's motion on September 12, 2005. *People v. Garcia* (*Garcia V*), 800 N.Y.S.2d 646 (2d Dep't 2005). On December 27, 2005, the Court of Appeals denied Garcia's request for leave to appeal. *People v. Garcia* (*Garcia VI*), 6 N.Y.3d 753 (2005) (Graffeo, J.).

     5.    *Third* Coram Nobis *Application*

On February 3, 2006, Garcia submitted a third *pro se* application for a writ of error *coram nobis*, arguing that his appellate counsel was ineffective for failing to argue that: (1) there was insufficient evidence supporting the theory of depraved indifference murder as opposed to intentional murder; (2) trial counsel was ineffective for failing to argue that the verdict was repugnant (*i.e.*, inconsistent); (3) the prosecutor made improper remarks in summation. Garcia then retained an attorney, who made a supplemental motion restating several of Garcia's claims and adding the claim that (4) trial counsel was ineffective for failing to argue that there was insufficient evidence to support his conviction for depraved indifference murder under People *v. Hafeez*, 100 N.Y.2d 253 (2003).

On March 20, 2007, the Appellate Division denied Garcia's third *coram nobis* application, *People v. Garcia* (*Garcia VII*), 830 N.Y.S.2d 910 (2d Dep't 2007), and the Court of Appeals denied his request for leave to appeal on June 20, 2007, *People v. Garcia* (*Garcia VIII*), 9 N.Y.3d 843 (2007) (Read, J.).

     6.    *Section 440.10 Motion*

On March 12, 2007, Garcia moved to vacate his conviction under N.Y. Crim. Proc. Law § 440.10, claiming that *People v. Hafeez*, 100 N.Y.2d 253 (2003), *People v. Payne*, 3 N.Y.3d 266 (2004), and several other depraved indifference murder decisions rendered the evidence insufficient to support his conviction on those counts. The New York Supreme Court denied Garcia's § 440.10 motion on June 26, 2007, finding his claim procedurally barred by N.Y. Crim. Proc. Law § 440.10(2)(c) because he could have raised this claim on direct appeal but failed to. *People v. Garcia* (*Garcia IX*), No. 232/97, slip op. (N.Y. Sup. Ct. June 26, 2007). On October 23, 2007, the Appellate Division denied his request for leave to appeal.

7.    *Federal Habeas Petition*

Garcia filed this petition on August 27, 2007, claiming that he is entitled to a writ of habeas corpus under 28 U.S.C. § 2254 on the following grounds:[2] (1) the trial court deprived him of due process by granting the government's reverse-*Batson* challenge to his use of peremptory challenges; (2) the evidence was legally insufficient to support his depraved indifference murder convictions; (3) his depraved indifference murder conviction was against the weight of the evidence; (4) appellate counsel provided ineffective assistance because he failed to argue that the evidence was legally insufficient to support Garcia's depraved indifference murder convictions; (5) appellate counsel provided ineffective assistance because he failed to argue that Garcia's depraved indifference murder conviction was against the weight of the evidence; (6) appellate counsel provided ineffective assistance because he failed to argue that the verdict was inconsistent; (7) appellate counsel provided ineffective assistance because he failed to argue that trial counsel provided ineffective assistance when he failed to object to the inconsistent verdict;

_____

[2]       The following numbering deviates from Garcia's due to several of the grounds duplicating one another and several grounds containing separate claims.

(8) appellate counsel provided ineffective assistance because he failed to argue that the prosecutor's remarks at summation constituted prosecutorial misconduct; (9) appellate counsel provided ineffective assistance because he failed to argue that the trial court erred by not giving a missing witness charge; (10) appellate counsel provided ineffective assistance because he failed to argue that the trial court erred by refusing to charge the jury that Garcia's mere presence was insufficient evidence to prove his involvement in the crime; (11) appellate counsel provided ineffective assistance because he failed to argue that Garcia was deprived of fair notice of the charges against him when the trial court imposed consecutive sentences on a theory different than the prosecution's earlier theory; and (12) appellate counsel provided ineffective assistance because he failed to argue that the imposition of consecutive sentences for the same act violated the Double Jeopardy Clause.[3]

DISCUSSION

A.       *The Legal Standards for § 2254 Petitions*

       1.       *Review of Procedurally Defaulted Claims*

A state court's explicit reliance on a procedural bar preventing adjudication of the merits of a claim generally constitutes an independent and adequate state law ground for the state court's judgment precluding federal review. *See Harris v. Reed*, 489 U.S. 255, 260-62 (1989) (explaining rationale for habeas corpus procedural default rule); *see also Coleman v. Thompson*,

---

[3]       Garcia also moved to stay the proceedings to allow him time to exhaust in state court -- and then amend this petition to add -- additional claims that appellate counsel was ineffective for failing to argue that he was denied a public trial and the right to be present at his own trial when a portion of jury selection was conducted in the jury room and out of his presence, and also for failing to argue that Garcia was denied his constitutional right to receive notice of the charges against him when his name was included only in the caption of the indictment and not in its body.  However, it would be futile to grant him leave to amend his petition to include these claims, as they are all time-barred. These claims do not relate back to any of his previously filed charges, as they are "supported by facts that differ in both time and type from those the original pleading set forth."  *Mayle v. Felix*, 545 U.S. 644, 650 (2005).  Thus, I deny his motion for leave to amend his petition and his motion to stay adjudication of the petition.

501 U.S. 722, 750 (1991) (noting a state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having an opportunity to correct its own errors"). However, there are several circumstances in which a federal claim disposed of by a state procedural rule will still be reviewable on a federal petition for habeas corpus.

First, a petitioner is entitled to review of a procedurally defaulted claim if he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. A petitioner may establish cause by showing "'that the factual basis for a claim was not reasonably available to counsel . . . or that some interference by officials . . . made compliance impracticable.'" *Id.* at 753 (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must demonstrate that the alleged error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

Second, if a petitioner cannot show cause and prejudice, his procedural default may still be excused if he can demonstrate that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits -- that is, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This ground for excusing procedural default should be applied only in "extraordinary" cases, as courts deem substantial claims of actual innocence "extremely rare." *Schlup*, 513 U.S. at 321-22.

Third, a procedural rule can fail to be a state ground "adequate" to protect a judgment from federal collateral attack in rare circumstances.[4] There is a "limited category" of "exceptional cases where exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002) (citation omitted). Whether or not a procedural rule is adequate to prevent a federal court from reaching the merits of a claim "is determined with reference to the 'particular application' of the rule; it is not enough that the rule 'generally serves a legitimate state interest.'" *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (quoting *Lee*, 534 U.S. at 387). The requirement of adequacy is intended to prevent state courts from avoiding "deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims." *Id.* (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)).

Accordingly, the question courts must ask to determine adequacy is "whether application of the procedural rule is 'firmly established and regularly followed' in the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." *Cotto*, 331 F.3d at 240. In determining the adequacy of the application of a procedural rule, courts look to the following "guideposts":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether

---

[4]     The Supreme Court has tended not to characterize either cause and prejudice or a miscarriage of justice as affecting the adequacy of the procedural ground, though in a sense a procedural rule is not "adequate" to sustain a state court judgment when a habeas court looks past it due to cause and prejudice or a miscarriage of justice. *See generally Middleton v. Ercole*, No. 07-CV-2810 (JG) (VVP), 2007 WL 4264578, at *5 n.3 (E.D.N.Y. Dec. 3, 2007).

petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto*, 331 F.3d at 240; *see also Lee*, 534 U.S. at 381-83 (first articulating these factors).

    2.    *Review of State Court Adjudications on the Merits Under AEDPA*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") circumscribes the scope of federal habeas review of state convictions regarding claims the state court adjudicated on the merits. 28 U.S.C. § 2254(d). A federal habeas court may overturn a state court's ruling on the merits of a claim only if the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*[5]

The Supreme Court has interpreted the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" to mean "the holdings, as opposed to the dicta," of its decisions at the time of the state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.

A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413. An

---

[5]    This limited scope of review is often referred to as "AEDPA deference." *E.g.*, *Jimenez v. Walker*, 458 F.3d 130, 135 & n.2 (2d Cir. 2006).

unreasonable application is more incorrect than a merely erroneous one, *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (citing *Williams*, 529 U.S. at 411), but while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence," *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted)).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.      *The Reverse-*Batson *Claim*

Garcia bases his first claim on the prosecutor's objection to two peremptory challenges he exercised during jury selection. Jury selection took five rounds. In the first round, Garcia used six peremptory challenges, five of which were for white jurors. Tr. 239. Garcia's first peremptory challenge in the second round was to a white juror, and the prosecutor objected, claiming that Garcia was using his peremptory challenges in a racially discriminatory fashion. *See People v. Kern*, 75 N.Y.2d 638, 650 (1990) (holding that the New York Constitution prohibits a criminal defendant from using peremptory challenges in a racially discriminatory manner). Despite noting the "strong indication" of a discriminatory pattern, the court allowed Garcia to use this challenge. Tr. 240.

Garcia's next peremptory challenge was to another white prospective juror, and Garcia was asked for a race-neutral reason for this challenge. He proffered the fact that this

prospective juror had been the victim of a bank robbery involving a firearm.  The court noted that Garcia had failed to challenge a black woman who was the victim of a burglary, and Garcia, through counsel, responded that it was "one thing to be a victim of a burglary or car theft" and another to be victim of a bank robbery.  *Id.* at 244.  The court allowed this challenge.

Garcia again exercised a peremptory challenge to a white prospective juror, claiming when asked that his reason was that the prospective juror's brother had been victim of a carjacking.  The court found this reason to be pretextual, noting that the carjacking happened approximately fifteen years before and that the prospective juror was not present at the time of the crime.  *Id.* at 249-50.

During the third round, Garcia exercised another peremptory challenge to a white prospective juror.  When asked for a reason, Garcia's counsel stated that the prospective juror had had his car broken into, and he claimed that a prior ruling by the court allowed in evidence of Garcia's arrest for breaking into a car.[6]  The court stated its erroneous belief that the prospective juror's car had been broken into only to get a parking ticket to steal another person's car in a parking lot (the court was confusing the prospective juror with a different prospective juror, who had reported this odd circumstance).  Tr. 275, 326.  The court also said that if the defense could challenge all jurors who had been victims of car-related crimes it "would have to dismiss half the jurors in this trial."  *Id.* at 327.  The court found Garcia's proffered reason to be pretextual, and seated the challenged juror.  *Id.* at 327-28.

---

[6]        The precise scope of this ruling was disputed by the parties.  The arrest in question was Garcia's December 14, 1996 arrest for breaking into a car, and the trial court allowed its admission, and the admission of the fact that he used an alibi, for the purposes of explaining why he was in the station house when he gave his statement regarding the shooting.  Tr. 695-97.  The government later maintained that it was allowed to introduce evidence regarding the crime Garcia was arrested for but chose not to, while Garcia later maintained that the government was not allowed to introduce evidence regarding the offense leading to his arrest.  *Id.*

The Supreme Court has held that a party's racially discriminatory use of peremptory challenges violates the Equal Protection Clause of the Fourteenth Amendment. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (holding that Equal Protection Clause applies to the prosecution's use of peremptory challenges); *Georgia v. McCollum*, 505 U.S. 42, 46 (1992) (applying *Batson* to a criminal defendant's use of racially discriminatory peremptory challenges). While the Second Circuit has not decided whether or not the erroneous denial of a defendant's peremptory challenges could implicate the federal Constitution so as to warrant habeas relief, *McKinney v. Artuz*, 327 F.3d 87, 98 (2d Cir. 2003), district courts in the circuit have consistently held that the denial of peremptory challenges raises issues of state law only, *see, e.g.*, *Ramirez v. Phillips*, No. 04-CV-1516 (BMC), 2007 WL 2362138, at *3 (E.D.N.Y. Aug. 14, 2007) ("[D]istrict courts within this Circuit have uniformly held that a state court ruling sustaining a reverse-*Batson* challenge may not be reviewed on habeas corpus because there is no constitutional right to peremptory challenges." (citations omitted)); *Hayes v. Conway*, No. 05-CV-4088 (RMB), 2007 WL 2265151, at *4 (S.D.N.Y. Aug. 2, 2007) (holding that the deprivation of peremptory challenges is not constitutional error); *Ramirez v. Poole*, No. 03-CV-5202 (NGG), 2005 WL 1123775, at *4-*5 (E.D.N.Y. May 9, 2005) (similar).

Garcia contends, however, that even if the mere denial of peremptory challenges does not always rise to the level of a constitutional violation, the seating of a jury with members biased against him due to their past experiences with crime deprives him of his liberty without due process of law.[7]  However, Garcia was free to challenge these jurors for cause.  Having failed to do so, Tr. 237-38, 321, he waived any argument that they are unfit to serve on his jury.

---

[7]     He also argues that his case "presents a unique issue of whether a bias juror can be challenged on the grounds of race discrimination if the biasness is based on feelings towards a particular group of offenders, thus

C.  *The Sufficiency of the Evidence Regarding the Murder Convictions*

Garcia argues that under New York's evolving jurisprudence regarding depraved indifference murder, the evidence produced at trial was insufficient to sustain the jury's verdict that he exhibited depraved indifference as opposed to intent to kill. As the court deciding Garcia's § 440.10 noted, this claim is procedurally barred because Garcia did not raise it on appeal. *Garcia IX*, No. 232/97, slip op. at 2.

As the last court to address this claim denied it on procedural grounds, I am precluded from reviewing the claim. Garcia has produced no new evidence that might allow me to find that his conviction was a fundamental miscarriage of justice. *See Schlup*, 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). He also provides no grounds for challenging the adequacy of the procedural bar imposed by the § 440.10 court. None of *Cotto*'s guideposts points towards a finding that the procedural bar was inadequate. Garcia's failure to raise the issue made it "meaningless" to ask how the trial court and the appellate division would have ruled if he had raised it, *see Garvey v. Duncan*, 485 F.3d 709, 719 (2d Cir. 2007); state law demands compliance with § 440.10(2)(c) including in circumstances where this exact change in the law is at issue, *see, e.g.*, *People v. Scott*, 805 N.Y.S.2d 848, 848 (2d Dep't 2005) (imposing procedural bar to prevent review of the defendant's challenge to the sufficiency of the evidence

---

creating a race of offenders." Pet'r's Reply Mem. 4. To the extent that he argues that the prosecution is forbidden from making reverse-*Batson* challenges if they will result in seating jurors who have racially-charged attitudes toward crime, I reject his argument. *McCollum* suggests no such exception to the rule that defendants cannot use peremptory challenges in a racially discriminatory way, 505 U.S. at 48-50, and the proper remedy for a juror found to have racial bias against a defendant is a challenge for cause, *see Aldridge v. United States*, 283 U.S. 308, 314-15 (1931) (permitting inquiry of prospective jurors to determine if any suffer from disqualifying racial prejudice).

supporting a pre-*Hafeez* conviction for depraved indifference murder); *People v. Farino*, 800

N.Y.S.2d 194, 194 (2d Dep't 2005) (similar); and Garcia did not "substantially comply" with §

440.10(2)(c), which serves the important state interest of preventing collateral attack from

becoming a substitute for direct review, *cf. Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003)

(finding that § 440.10(2)(c) reflects "the New York legislature's choice to conserve judicial

resources").

   Ineffective assistance of counsel can constitute cause for procedural default, but I

find that Garcia's appellate counsel was not ineffective for failing to raise this claim.  The

Supreme Court has established the following standard for claims that defense counsel provided

ineffective assistance:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  Unless a defendant makes both showings, it
> cannot be said that the conviction . . . resulted from a breakdown
> in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Thus, to make out this type of claim, the

petitioner must demonstrate both (1) that his attorney's performance "fell below an objective

standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at

694.

   In assessing whether counsel's performance was deficient, judicial scrutiny "must

be highly deferential," and the court must "indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted); *accord Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998); *see also Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*) ("[C]ounsel has wide latitude in deciding how best to represent a client . . . ."). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct," *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), instead emphasizing that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms,'" *id.* (quoting *Strickland*, 466 U.S. at 688), which requires "a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins*, 539 U.S. at 523 (quoting *Strickland*, 466 U.S. at 689).

To establish the required "reasonable probability" that counsel's errors changed the outcome of the case, the petitioner must show not just "some conceivable effect," *Strickland*, 466 U.S. at 693, but rather "a probability sufficient to undermine confidence in the outcome," *id.* at 694. This determination, unlike the determination whether counsel's performance was deficient, may be made with the benefit of hindsight. *Lockhart v. Fretwell*, 506 U.S. 364, 371-73 (1993).

Garcia's appellate counsel did not perform in a deficient manner by not making this claim. Initially, I note that for the entire pendency of the trial and appeal up until 8 days before the Appellate Division decided Garcia's appeal, prevailing law, as stated in *People v. Register*, 60 N.Y.2d 270 (1983), and reaffirmed in *People v. Sanchez*, 98 N.Y.2d 373 (2002), plainly permitted Garcia's conviction on charges of murder through recklessness in

circumstances evincing a depraved indifference to human life. *See Sanchez*, 98 N.Y.3d at 378 (finding that point-blank shooting could constitute depraved indifference murder since the shooting was sudden and created "transcendent risk" of death). Eight days before the Appellate Division decided Garcia's appeal, the New York Court of Appeals decided *People v. Hafeez*, 100 N.Y.2d 253 (2003), which set in motion a line of cases refining the standards for depraved indifference murder that eventually had the effect of severely restricting the applicability of that charge in cases of point-blank one-on-one shootings. *See People v. Feingold*, 7 N.Y.3d 288 (2006) (defining depraved indifference as a culpable mental state and noting, "Beginning with *Hafeez*, the *Register/Sanchez* rationale was progressively weakened so that it would no longer support most depraved indifference murder convictions, particularly one-on-one shootings or stabbings."); *see also People v. Gonzalez*, 1 N.Y.3d 464, 467-68 (2004) ("Depraved indifference murder does not mean an extremely, even heinously, intentional killing. Rather, it involves a killing in which the defendant does not have a conscious objective to cause death but instead is recklessly indifferent, depravedly so, to whether death occurs."); *People v. Payne*, 3 N.Y.3d 266, 270 (2004) ("Indifference to the victim's life . . . contrasts with the intent to take it."); *People v. Suarez*, 6 N.Y.3d 202, 208 (2005) ("[D]epraved indifference murder is not made out unless the core statutory requirement of depraved indifference is established.").

It is a difficult question precisely when the current standard, under which depraved indifference is a culpable mental state distinct from intent and extremely unlikely to be present in one-on-one killings, was adopted. In making clear that depraved indifference was a mental state, the Court of Appeals in *Feingold* noted that it was simply making explicit the reasoning underlying previous cases. 819 N.Y.S.2d at 294 ("We say today explicitly what the

Court in Suarez stopped short of saying: depraved indifference to human life is a culpable mental state."). However, I need not resolve this complicated issue of state law, as I find that even under the current standard, the evidence was sufficient to prove that Garcia committed depraved indifference murder.

A verdict may be overturned for insufficient evidence only if, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime to be proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence at trial, viewed in the light most favorable to the government, established that Garcia was assaulted by several individuals on June 9, 1996, and approached them along with an unapprehended associate later that day, Tr. 705-06; that he pointed at a group of individuals, including a child, sitting on the steps of two adjoining buildings and said, "These are them," *id.* at 571, 583, 634, 640-41, 706; that Garcia's associate opened fire at the entire group on the steps, killing two and wounding one, *id.* at 584-87, 641-42, 706; and that Garcia and his associate walked away casually together, *id.* at 586-87.

This evidence is entirely sufficient to allow a rational jury to conclude that Garcia solicited and aided his associate in retaliating against the individuals who assaulted Garcia by firing indiscriminately into a group of them. Indeed, while firing at a single individual at point-blank range will rarely constitute depraved indifference murder as opposed to intentional murder, *Feingold*, 7 N.Y.3d at 294, firing into a group of individuals without regard for who is hit is a paradigm example of depraved indifference murder, *see, e.g.*, *Payne*, 3 N.Y.3d at 272 ("As the drafters of the Penal Law put it, depraved indifference murder is extremely dangerous and fatal conduct performed without specific homicidal intent but with a depraved kind of wantonness:

*for example, shooting into a crowd . . . .*" (emphasis added, internal quotation marks omitted));

*Suarez*, 6 N.Y.3d at 210 (noting that historically depraved indifference murder "required conduct

that endangered many people indiscriminately, reflecting cases in which the defendant did not

wish to kill or injure any particular individual, but had no care for whether the life of any

particular person was lost or not").

Accordingly, any claim Garcia's appellate counsel may have made regarding the

sufficiency of the evidence on the depraved indifference murder counts would have been

rejected. Therefore, Garcia's counsel was not ineffective for not making such a claim. *See*

*Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (noting that appellate counsel "need not advance *every*

argument, regardless of merit, urged by the appellant" (emphasis in original) (citing *Jones v.*

*Barnes*, 463 U.S. 745, 751-52 (1983)).[8] For this reason, Garcia cannot establish cause for his

procedural default, and I am thus barred from deciding the merits of his claim.[9]

D.     *The Weight of the Evidence*

Garcia claims that the verdict was against the weight of the evidence. Pet'r's

Mem. 27-28. A challenge to the weight of the evidence require the court to evaluate the

evidence presented by both sides, including an assessment of the witnesses' credibility. N.Y.

Crim. Proc. Law § 470.15 (5); *People v. Bleakley*, 69 N.Y.2d 490, 495 (1987). However, such a

challenge presents only a state law issue and is not a ground for federal habeas review. *See, e.g.*,

*Guity v. Ercole*, No. 07-CV-728 (RPP), 2007 WL 3284694, at *6 (S.D.N.Y. Nov. 6, 2007)

(noting that challenges to the weight of the evidence are "not cognizable on habeas review,"

---

[8]     As counsel's performance was not deficient, I have no occasion to consider prejudice.

[9]     Of course, in a curious artifact of federal habeas corpus law, I was obliged to consider the merits
of Garcia's claim in order to determine that I am procedurally barred from reaching the merits of his claim.

citing cases); *Norris v. Fischer*, No. 06-CV-2190 (JG), 2007 WL 1452127, at *6-*7 (E.D.N.Y. May 15, 2007) (similar).

However, even if it presented a federally cognizable claim, I would reject Garcia's contention that his verdict was against the weight of the evidence. Garcia does not base his challenge on countervailing evidence tending to show he was not involved in the shooting or to negate the theory that he exhibited depraved indifference to human life; rather, his challenge based on the weight of the evidence is simply that the government's own evidence establishes that there was "nothing impulsive" about his actions and that "this was a premeditated, calculated attack by the intentional killing of two men, and the intentional attempted murder of the third man present." Pet'r's Mem. 28.

While it is true that the evidence tends to show that Garcia acted in concert with an associate in retaliation for a past assault, this does not undermine the inference that Garcia acted with depraved indifference to human life. It is true that one way Garcia might have attempted to retaliate for the past assault might have been to solicit his associate to attempt to kill Tapia, Anaya, and Incarnacion. However, another way he might have sought to retaliate could have been simply to solicit his associate to terrorize his assailants by firing into their midst with depraved indifference as to whether or not any of them was killed. Another possibility, which was apparently credited by the jury, is that Garcia sought to retaliate by soliciting his associate to kill one of them, Incarnacion, and to fire at all of them with depraved indifference as to whether the rest of them lived or died. Though not the only possibility consistent with the evidence at trial, this possibility was not against the weight of the evidence.

E.     *Ineffective Assistance of Appellate Counsel*

1.      *Failure to Argue that the Evidence Was Legally Insufficient*

For the reasons stated in Section C, above, Garcia's appellate counsel did not render ineffective assistance when he failed to argue that the evidence was legally insufficient to support Garcia's conviction on the depraved indifference murder charges.

2.      *Failure to Argue that the Verdict Was Against the Weight of the Evidence*

For the reasons stated in Section D, above, the verdict was not against the weight of the evidence. Accordingly, Garcia's appellate counsel was not ineffective for failing to argue that it was against the weight of the evidence.[10]

3.      *Failure to Argue that the Verdict Was Inconsistent*

Garcia claims that the jury's verdict convicting him of the depraved indifference murder of Tapia and Anaya, and of the attempted intentional murder of Incarnacion, was repugnant, or inconsistent, because intent and depraved indifference are two distinct mental states. "A verdict is inconsistent or repugnant -- the difference is inconsequential -- where the defendant is convicted of an offense containing an essential element the jury has found the defendant did not commit." *People v. Trappier*, 87 N.Y.2d 55, 58 (1995) (citing N.Y. Crim. Proc. Law § 300.30 (5)). However, under New York law an individual may have different mental states with respect to different results, such as harm to different victims. *Trappier*, 87 N.Y.2d at 58-59. The jury could have inferred that Garcia intended to kill Incarnacion and evinced a depraved indifference towards human life with respect to Tapia and Anaya.

---

[10]     I note that it is not entirely clear that Garcia even argues otherwise. In his memorandum of law, he challenges the weight of the evidence as part of his challenge to the sufficiency of the evidence, Pet'r's Mem. 27-28, and then argues that his appellate counsel was ineffective for failing to argue that "the verdict was against the sufficiency of the evidence," *id.* at 30. I take him to view his challenge to the weight of the evidence as intertwined with his challenge to the sufficiency of the evidence, and thus to challenge his attorney's failure to raise both claims.

Accordingly, any objection would have been meritless, and thus Garcia's appellate counsel was not ineffective for failing to make such a claim.

4.  *Failure to Argue that Trial Counsel Provided Ineffective Assistance By Failing to Argue that the Verdict Was Inconsistent*

For the reasons stated in Section E.3, the verdict was not inconsistent, and thus Garcia's trial counsel did not render deficient performance in failing to argue that it was. Therefore, Garcia's appellate counsel did not render deficient performance in failing to argue that Garcia's trial counsel was ineffective in failing to claim that the verdict was inconsistent.

5.  *Failure to Argue that the Prosecutor Committed Misconduct in Summation*

Garcia argues that his appellate counsel provided ineffective assistance by failing to argue that the prosecutor committed misconduct in summation. In his petition and memorandum of law, he does not explain exactly what aspects of the prosecutor's summation constituted misconduct, though in the supplemental affirmation supporting his third petition for a writ of error *coram nobis*, he takes exception to the prosecutor's remarks indicating that the jury was not present in the grand jury and thus could not evaluate the full context of previous statements made by government witnesses. Supplemental Aff. ¶¶ 10-13, *Garcia VII*, 830 N.Y.S.2d 910. However, Garcia in his summation had already raised the issue of what questions were asked in the grand jury, describing the questioning that preceded one of the government witnesses' grand jury testimony. Tr. 775-76. Garcia went into detail about this questioning in order to argue for the significance of the fact that the witness did not state at the grand jury that Garcia had a knife. *Id.* In light of Garcia's reference to matters not in evidence, the prosecutor was entitled to advise the jurors that no evidence had been presented regarding the questions posed in the grand jury. *See, e.g.*, *People v. Applewhite*, 856 N.Y.S.2d 230, 231 (2d Dep't 2008)

(finding certain of prosecutor's remarks "fair response to defense counsel's comments during summation"); *People v. Draskin*, 535 N.Y.S.2d 439, 439 (2d Dep't 1988) ("[T]he prosecutor's remarks must be evaluated in comparison with the summation of the defense counsel.").

To the extent that Garcia here complains of other remarks by the prosecutor, many such claims, would have been procedurally barred raised it on appeal, as he largely made only general one-word objections and his mistrial motion came belatedly at the end of the government's summation. *See, e.g.*, *People v. Malave*, 775 N.Y.S.2d 588, 588 (2d Dep't 2004) ("The defendant's contention that he was deprived of a fair trial as a result of the prosecutor's summation is unpreserved for appellate review. He either did not object to the remarks at issue, made general one-word objections, or his objections were sustained without any further request for curative instructions. Moreover, the defendant's motion for a mistrial, made after the completion of summations, was untimely and failed to preserve his contentions." (internal citations omitted)). Of those remarks to which Garcia lodged more than general objections, I do not see any improper statements "'so flagrant or pervasive as to deny [him] a fair trial.'" *Applewhite*, 856 N.Y.S.2d at 230 (quoting *People v. Almonte*, 806 N.Y.S.2d 95, 96 (2d Dep't 2005)). Accordingly, it was not deficient performance for Garcia's appellate counsel to decline to claim that the prosecutor's summation was improper.

6. *Failure to Argue that the Trial Court Erred By Not Giving a Missing Witness Charge*

Garcia argues that his appellate counsel's performance was deficient due to his failure to argue that the trial court erred by not instructing the jury that they could draw inferences against the government due to its failure to call other individuals who were present at the shooting as witnesses. At trial, Garcia requested such a charge, but the trial court denied it,

24

finding that the testimony of the witnesses would be cumulative and that the witnesses were not under the control of the state, as they were in Mexico. Tr. 761-62. Garcia claims that their testimony was not cumulative, as they could have provided evidence on the question whether he had a knife in his hand. Tr. 757-60. He also notes that one of the potential witnesses was in contact with a government witness who testified at trial, and claims that she would have been willing to return to the United States to testify. *Id.* at 592-95.

Under New York law, a party is entitled to a missing witness charge when the missing witness has knowledge material to the trial, is expected to provide non-cumulative testimony favorable to the party against whom the charge is sought, and is available to that party. *E.g.*, *Farr v. Greiner*, No. 01-CV-6921 (NG) (MDG), 2007 WL 1094160, at *13 (E.D.N.Y. Apr. 10, 2007) (citing *People v. Macana*, 94 N.Y.2d 173, 196 (1994)); *see also People v. Gonzalez*, 68 N.Y.2d 424, 427 (1986) (similar). Even assuming any or all of the witnesses were available to testify for the prosecution, Garcia does not identify any respect in which these witnesses would have provided non-cumulative testimony favorable to the prosecution. He argues that they could have testified non-cumulatively as to whether he had a knife in his hand, but there is no indication that they would have testified in favor of the prosecution. Indeed, Garcia's attorney's comments in arguing for a missing witness charge strongly suggests that the missing witnesses' pretrial statements did not mention a knife. Tr. 757-60. Similarly, Garcia also notes that the missing witnesses could have challenged the credibility of the government's testifying witnesses, but this testimony would not have been favorable to the prosecution. If *Garcia* had wished to produce them for these purposes he would have been entitled to try, but no adverse

inference arises from the government's decision not to call witnesses for the purposes of impeaching its own witnesses.

Accordingly, Garcia's appellate counsel's decision that the denial of the missing witness charge was a weaker issue than those he raised fell well within the "wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, especially in light of an appellate lawyer's special responsibility to use professional judgment to select only the most promising issues for appeal, *Jones*, 463 U.S. at 751-53.

7.    *Failure to Argue that the Trial Court Erred By Not Giving a Mere Presence Charge*

Garcia argues that his appellate counsel provided ineffective assistance by failing to argue, on appeal, that the trial court erred in not instructing the jury that Garcia's mere presence at the crime was insufficient to support his conviction on a theory of acting in concert. It is true that the trial court refused Garcia's request for such an instruction, but Garcia was not entitled to reversal on this ground, as the trial court's instructions on acting in concert, which stressed several times that Garcia had to play some role in the offense, adequately conveyed the concept to the jury.  *See, e.g.*, *People v. Henderson*, 762 N.Y.S.2d 553, 554 (4th Dep't 2003) ("The court was not required to instruct the jury specifically, as requested, that defendant's mere presence at the scene was insufficient to convict him under an acting in concert theory, since the charge as a whole conveyed the proper standards."  (internal quotation marks and alterations omitted)); *People v. Compitiello*, 500 N.Y.S.2d 52, 53 (2d Dep't 1986) ("[T]he trial court did not err in failing to charge, in explicit language, that the defendant's mere presence at the scene of the crime was insufficient to support the theory of acting in concert, since the charge as given made clear that the defendant could not be convicted merely on the basis of his presence at the

26

crime scene.").  While, as Garcia notes, the court did state that "the extent to which a defendant may participate in the commission of a crime is immaterial," Tr. 853, it also repeatedly made clear that the defendant needed to participate to some degree, *see, e.g.*, *id.* at 854 ("It is not necessary that each person accused of acting in concert take part in all of the alleged criminal conduct, so long as you find that the defendant played a part in the commission of the crime or crimes charged in the indictment.").

Accordingly, the trial court did not err in refusing Garcia's request for a specific instruction that his mere presence was insufficient to prove his guilt, and Garcia's appellate counsel did not perform deficiently by failing to make this claim on appeal.[11]

8.  *Failure to Argue that the Trial Court Erred By Not Charging Attempted Murder and Reckless Endangerment in the Alternative*

Garcia claims that his appellate counsel was ineffective when he failed to argue that the trial court erred by not instructing the jury that they must consider the charge of attempted murder in the alternative with the charge of reckless endangerment.  He argues that since intent and recklessness are different mental states, it is impossible for him to attempt to

---

[11]        Garcia argues that in criminal cases depending exclusively on circumstantial evidence, the facts must exclude to a moral certainty every reasonable hypothesis consistent with the defendant's innocence.  Pet'r's Mem. 62.  It is unclear what relevance this contention has to whether his appellate counsel rendered ineffective assistance by failing to argue that Garcia was entitled to a jury instruction on mere presence.  To the extent he suggests that the Appellate Division would have been more likely to reverse due to the circumstantial nature of the evidence of his intent, I disagree.  The moral certainty standard is more obviously relevant to the sufficiency of the evidence against the defendant than to the necessity of a charge on mere presence, yet "the test for appellate review on the issue of legal sufficiency of the evidence is the same for both direct and circumstantial evidence," *People v. Rossey*, 89 N.Y.2d 970, 971-72 (1997).  Accordingly, I do not find that the existence of some circumstantial evidence in his case would have made the Appellate Division more likely to reverse based on the trial court's failure to give a mere presence charge.  To the extent Garcia is obliquely arguing that he was entitled to a jury charge that the evidence had to exclude to a moral certainty every reasonable hypothesis consistent with his innocence, he is incorrect.  While the evidence of his mental state was circumstantial, *cf. id.* at 971 (noting that evidence that the defendant shared his associate's intention to kill was circumstantial), the evidence of his participation in the crime by identifying the victims was direct.  In a case involving both direct and circumstantial evidence, a defendant is not entitled to a charge on moral certainty.  *See People v. Washington*, 847 N.Y.S.2d 113, 113 (2d Dep't 2007) ("Since the case against the defendant consisted of both direct and circumstantial evidence, the defendant was not entitled to a charge that his guilt must be proven to a moral certainty, rather than beyond a reasonable doubt.").

intentionally murder Incarnacion and also to be reckless with respect to danger to Incarnacion. This contention is correct, but Garcia misapprehends the nature of the reckless endangerment charge.

Garcia was charged with committing reckless endangerment when his associate fired a weapon in the direction of Incarnacion. However, the charge did not require him to be reckless with respect to the risk of harm to Incarnacion; instead, the charge accused him of recklessly engaging in conduct creating a grave risk of death to *another person* in circumstances evincing a depraved indifference to human life. Tr. 880-83. It is perfectly consistent for Garcia, acting in concert with his associate, to intend to kill Incarnacion and to be reckless with respect to the risk of harm to other individuals near Incarnacion. *See People v. Campbell*, 617 N.Y.S.2d 195, 195 (2d Dep't 1994) (allowing convictions for both attempted murder and reckless endangerment when it was possible for the defendant to intend to kill one victim and be reckless regarding the risk to another victim). It appears that the prosecutor, out of the presence of the jury, at one point mistakenly construed the reckless endangerment count to charge him with recklessness towards the risk to Incarnacion, *see id.* 918 ("It is conceivable that he can intentionally attempt to kill Francisco Incarnacion, but also recklessly injure him while trying to shoot at the other."), but this apparent error does not change the elements of the crime with which Garcia was charged. *Cf. People v. Koullias*, 465 N.Y.S.2d 748, 750 (2d Dep't 1983) ("A fire or explosion that injures someone several blocks away constitutes reckless endangerment regardless of the defendant's knowledge or design as to a particular victim.").

Accordingly, it was not ineffective assistance for Garcia's attorney to decline to raise this argument on direct appeal.

9.	*Failure to Argue that the Imposition of Consecutive Sentences Deprived Garcia of Fair Notice*

Garcia claims that his appellate counsel provided ineffective assistance by failing to argue that the trial court's imposition of consecutive sentences constituted a change in the theory of the prosecution, depriving Garcia of fair notice of the charges against him. As best I can reconstruct his argument, I take Garcia to be claiming that the basis on which the trial court imposed consecutive sentences was the theory that each gunshot was a separate intentional act. This theory, he argues, varied impermissibly from the theory upon which he had been indicted and convicted (with respect to the depraved indifference charges), which was that his associate recklessly fired the gun several times, all of which together constitute a single act. Garcia claims that this variance deprived Garcia of fair notice of the charges against him.

Garcia's argument is unpersuasive. The sentencing court gave no indication that Garcia's consecutive sentences on his depraved indifference murder charges were imposed based on the court's belief that Garcia acted intentionally, as opposed to with the requisite mental state of recklessness under circumstances evincing a depraved indifference to human life. Sent'g Tr. 27-28.

The record belies Garcia's claim that he was indicted for, and convicted of, a singular course of conduct consisting of shooting several times. The indictment, which the trial court read to the jury during the charge, refers to three separate acts committed by acting in concert with another person: (1) shooting recklessly in the direction of Tapia under circumstances evincing a depraved indifference to human life, Tr. 863; (2) shooting recklessly in the direction of Anaya under circumstances evincing a depraved indifference to human life, *id.* at 869; and (3) intentionally attempting to cause the death of Incarnacion with a deadly weapon, *id.*

29

at 872. This theory, that each of the shots which struck an individual was a distinct act committed with a distinct mental state, is entirely consistent with Garcia's consecutive sentences, and was set forth explicitly in the indictment. The theory that Garcia's associate's firing of several shots constituted a single indivisible course of conduct existed only in Garcia's mind. Accordingly, Garcia's attorney did not provide ineffective assistance in failing to make this argument.

10.   *Failure to Argue that the Imposition of Consecutive Sentences Violated the Double Jeopardy Clause*

Garcia argues that since his associate's course of conduct in firing several times constitutes a single act, the imposition of consecutive sentences for the same act violates the Double Jeopardy Clause, and that his appellate counsel provided ineffective assistance when he failed to raise this claim on appeal. New York has a statute prohibiting consecutive sentences based on the same criminal act, N.Y. Penal Law § 70.25 (2), and Garcia's appellate counsel raised the claim that under this provision his sentences should run concurrently. The Appellate Divison rejected this claim, finding that the firing of separate gunshots constituted separate acts, not one unitary course of conduct. *Garcia I*, 756 N.Y.S.2d at 600-01. As the Double Jeopardy Clause only bars consecutive sentences in violation of state law, *Missouri v. Hunter*, 459 U.S. 359, 366 (1983) ("With respect to cumulative sentences imposed in a single criminal trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."), Garcia's consecutive sentence, which comports with § 70.25 (2), is constitutional.

CONCLUSION

For the reasons stated above, the petition is denied. As Garcia has failed to make a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 31, 2008
       Brooklyn, New York